UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA MCMAHON,<br><br>    Plaintiff,<br><br>    v.<br><br>TUESDAY MORNING, INC.,<br><br>    Defendant. | Case No. 14-cv-05547-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**<br><br>Docket No. 63 |

    Currently pending before the Court is Plaintiff Cynthia McMahon's motion for preliminary approval of a class action settlement with Defendant Tuesday Morning, Inc. ("TM"). Having considered the motion, supplemental filings, and the various accompanying submissions, the Court hereby **GRANTS** the motion for preliminary approval. The Court also approves the stipulation to the filing of an amended complaint. *See* Docket No. 73 (stipulation).

    Federal Rule of Civil Procedure 23(e) requires that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). At the preliminary approval stage of proceedings, a court considers whether the settlement falls within an acceptable range (with respect to fairness, reasonableness, and adequacy) such that notice should be given to the settlement class. Factors that a court considers in assessing whether preliminary approval is warranted are largely the same as those factors that a court considers at final approval, namely:

> the strength of the plaintiff's case; the risk expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and [only after notice is given to the class] the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Taking into account the above factors, the Court concludes that the settlement in the instant case falls within the permissible range such that notice of the settlement should be given to the class and class members' views on the settlement solicited. In so concluding, the Court acknowledges that the sum that will be paid by TM ($779,500) is relatively small, particularly compared to the maximum probable verdict value estimated by Ms. McMahon (*i.e.*, $16.4 million). (The $779,500 figure is only 4.75% of the estimated $16.4 million verdict value.) But TM has raised arguments that put into question whether the maximum probable verdict value is reasonable or, even if so, there is a reasonable likelihood that that value could not be achieved because of identified litigation risks. For example:

- Ms. McMahon estimated that the rest break claim is worth $4.1 million. But the bulk of the claim is – undisputedly – based on "late" (rather than missed) rest breaks, and there is authority supporting TM's position that employers have some flexibility and discretion regarding the precise timing of rest breaks. Also, Ms. Mahon assumed that "a deviation of more than 15 minutes after the mid-point of a shift constitutes a violation of California law." Docket No. 79 (Joint Br. at 5), an assumption not clearly grounded in existing case law.
- Ms. McMahon estimated that the derivative claim for waiting time penalties is worth $5.5 million. But some courts have held that penalties cannot be obtained for rest break violations because the money not paid for the rest breaks does not constitute wages.
- Ms. McMahon estimated that the PAGA claim is worth $6.8 million. But Ms. McMahon assumed that "PAGA's 'subsequent violation' penalty rate of $200 is triggered immediately after the occurrence of the first alleged PAGA-eligible labor code violation, rather than after a 'notice' event such as Plaintiff's filing of a PAGA letter with the LWDA or . . . after an employer receives notice of a labor code violation from a court or government agency." Docket No. 79 (Joint Br. at 9). Furthermore, as this Court noted in *Viceral v. Mistras Grp., Inc.*, No. 15-cv-

2

02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016), courts have significant discretion to reduce civil penalties under PAGA and have done so. *See id.* at *26 (noting that "the parties identified cases in which courts reduced PAGA awards by roughly 30%-80%").

- For the non-PAGA claims, for class certification, Ms. McMahon would have to show not only common questions but also predominance of such, and there is no dispute that TM's rest break policy was facially compliant; TM contends this makes class certification more difficult.

Accordingly, that the overall settlement fund represents 4.75% of the maximum verdict value estimated by Ms. McMahon does not render the settlement inadequate or unreasonable. In reality, the probable verdict value is far less than $16.4 million. Given the litigation risks discussed above, the verdict value would reasonably be a fraction of $16.4 million. Thus the settlement represents a percentage significantly higher than 4.75%. Moreover, the litigation risks are substantial for reasons detailed in the supplemental briefing submitted by the parties.

The Court further acknowledges that the PAGA claim is being settled for only $53,333 (with $40,000 of that figure being awarded to the LWDA).[1] If the Court were to adopt Ms. McMahon's maximum valuation of the PAGA claim ($6.8 million), the PAGA claim would be settled for only 0.78% of its full value. But as noted above, Ms. McMahon's valuation of $6.8 million is questionable. Moreover, "the PAGA claim is subject to the same risk on the merits as the non-PAGA claims." *Id.* Taking these circumstances into account, the Court concludes that it is not unreasonable to assess the PAGA settlement in terms of TM's maximum valuation ($3.5 million). *But see* Docket No. 79 (Joint Br. at 11) (TM providing an additional argument that even $3.5 million is too big a valuation). Under TM's valuation, the PAGA claim would be settled for 1.5% of its full value. While this is a relatively small percentage, the Court cannot say that it does not fall within the permissible range especially when the settlement as a whole is taken into

---

[1] In response to the Court's expressed concern about the adequacy of the PAGA settlement initially offered, the parties revised the settlement, increasing the overall settlement fund and enhancing the PAGA settlement in particular.

3

1 account. *See id.* at \*28 (noting that, "in evaluating the adequacy of a settlement of a PAGA claim,
2 courts may employ a sliding scale, taking into account the value of the settlement as a whole" such
3 that "where a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be
4 fulfilled even with a relatively small award on the PAGA claim itself, because such 'a settlement
5 not only vindicates the rights of the class members as employees, but may have a deterrent effect
6 upon the defendant employer and other employers, an objective of PAGA'"). In *Viceral*, this
7 Court indicated that a small PAGA settlement may be acceptable where

> the Rule 23 settlement, when the risks on the merits are taken into
> account, is actually more than minimally reasonable; indeed, given
> the likelihood of no recovery [here], the settlement is in fact
> relatively substantial. . . . [S]ettlement of the PAGA claim may be
> substantially reduced below its standalone settlement value without
> sacrificing its statutory purposes because the non-PAGA settlement
> is relatively substantial.

*Id.* While, in the instant case, the settlement of the non-PAGA claims may not be "robust" or "substantial," the settlement is not inconsequential given the litigation risks identified above. The settlement of the non-PAGA claims is more than minimally reasonable and is sufficiently reasonable to serve the underlying purposes of PAGA, even with the relatively low PAGA settlement. Moreover, the settlement value of the PAGA claim relative to the verdict value of the PAGA claims is not disproportionately low when compared to the ratio of the overall settlement value relative to the overall verdict value. This is especially so considering the risk that a court could, in its discretion, reduce any PAGA award below the statutory amount.

///
///
///
///
///
///
///
///
///

Accordingly, the Court grants the motion for preliminary approval. The parties are directed to file a modified settlement agreement consistent with their representations and a revised proposed order for the undersigned to sign. If the class notice needs to be modified as well, the parties shall further file a modified class notice. The filings shall be made no later than **March 9, 2017**. Redline versions shall also be filed, so that the Court may view what changes have been made.

This order disposes of Docket No. 63.

**IT IS SO ORDERED**.

Dated: February 23, 2017

_____
EDWARD M. CHEN
United States District Judge

5